716 P.2d 62

**CONTINENTAL TELEPHONE COMPANY OF THE WEST, an Arizona corporation, Plaintiff/Appellee,**

v.

**Trevelyn G. BLAZZARD and Sylvia Blazzard, husband and wife, Defendants/Appellants.**

**No. 2 CA–CIV 5605.**

Court of Appeals of Arizona,
Division 2, Department A.

Feb. 20, 1986.

As Corrected June 4, 1986.

2

Frost & Porter, P.C. by S. Gibbons Frost, G. Terris Porter, Show Low, for plaintiff/appellee.

Struckmeyer and Wilson by Robert L. Greer, Phoenix, for defendants/appellants.

OPINION

FERNANDEZ, Judge.

Appellants Trevelyn and Sylvia Blazzard seek a new trial, complaining that the trial court erred in several of its rulings and that the jury verdict was the result of passion and prejudice. We find no error and affirm.

Appellee Continental Telephone Company of the West (Continental) sued the Blazzards in October of 1980 for damages incurred because of Trevelyn Blazzard's alleged wrongful interference with Continental's attempt to lay buried telephone cable next to a road that runs across the Blazzard property. Continental alleged in its complaint that it had the right to lay the cable across the property either because of an express easement, a prescriptive easement or because the proposed cable was along a public right-of-way. The Blazzards counterclaimed, seeking compensatory damages for breach of contract and compensatory and punitive damages for trespass. The Blazzards also filed a third-party claim against Navajo County, alleging that the county has only a 24-foot-wide prescriptive easement for the roadway and that it had no authority to permit Continental to lay buried cable. Continental later filed an amended complaint which sought punitive damages for Blazzard's alleged wrongful interference with Continental's franchise from Navajo County.

In July 1978 the Blazzards purchased 160 acres near Holbrook in Navajo County. At the time an overhead telephone cable and a number of poles were located along McLaws Road, an east-west road that bisects the property. In mid-September 1978 Continental installed an underground cable across the property along the approximate path of the overhead line. Six aboveground pedestals were also installed to provide access to the cable. Blazzard was unaware that the underground line had been installed, since he resided in California at the time.

Once Blazzard discovered the buried line in late 1978, he contacted Continental to determine the legal basis of its entry onto his property. The testimony at trial was that portions of the buried cable were within 33 feet of the center line of McLaws Road, and portions of it were more than 33 feet from the center line. Blazzard sent two letters to Continental in 1980, one of which purported to establish a license for Continental to use the property for its cable at a rental of $7,920 per month. The letter stated that failure to remove the cable would constitute an acceptance of the alleged agreement. Continental did not respond to the letter, and thereafter Blazzard sent several demands for past-due amounts under the agreement. That letter was the basis for the Blazzards' breach of contract claim.

In mid-1980 Continental decided to bury a second cable within 33 feet of the center line of McLaws Road in order to settle the dispute with Blazzard. It obtained a permit from Navajo County to perform the work on a public right-of-way. When its construction crew attempted to bury the second cable, Blazzard obstructed their work by blocking their machines with vehicles and by threatening to "blow their heads off." The crew left after two days and Continental filed suit shortly thereafter.

Continental and Navajo County moved for summary judgment in mid-1982, and a partial summary judgment was entered in May 1983 which declared that McLaws

Road is a public highway and that Navajo County has authority to grant franchises for utility use within the right-of-way of McLaws Road. Navajo County was dismissed from the case by stipulation at the same time.

The case was tried to a jury in December 1983. Blazzard testified that he had purchased the property with the intent to subdivide it and place 450 manufactured homes on it. He contended that the value of the property had been decreased by the installation of the underground cable and that the installation interfered with his subdivision and development plans. Continental produced evidence that the real estate market in the area had greatly declined in the previous three to four years and was then at a standstill.

Continental contended during trial that it had authority to bury the cable under an easement entered into in 1957. It introduced a document which was entitled "Telephone Company Right-of-Way Easement, Application for Telephone Service." The document gave permission to Western States Telephone Co., Inc. (Continental's predecessor in interest) to construct, operate and maintain a telephone line "on or under" the property. The document was signed by R. E. Lyall, the owner of the property at the time. His wife did not sign the document, it was not notarized and it has never been recorded. The court ruled during trial that the easement was no longer in effect since it had not been recorded, and apparently[1] instructed the jury that Continental's entry on the property for the purpose of burying the first cable was without authority.

In the course of settling jury instructions, the court ruled as a matter of law that the overhead lines had been authorized by a license only. He also ruled that the right-of-way for McLaws Road is 66 feet in width. The court then apparently instructed the jury that Navajo County has author-

ity to grant franchises to utility companies within a right-of-way of 33 feet on either side of the center line of a county highway. The jury returned a verdict of $8,368.34 in compensatory damages for the Blazzards, and an award of $4,498.34 in compensatory damages and $3,870 in punitive damages for Continental. The two awards cancel each other.

The Blazzards contend on appeal that the court erred in ruling as a matter of law that the right-of-way is 33 feet on either side of the center line of the road. They contend that the ruling was an unconstitutional taking of their property without just compensation or, alternatively, that it placed an additional burden on their property so that Continental's attempt to lay the second cable also constituted a trespass. In addition, the Blazzards complain that the jury's verdict was actuated by passion and prejudice, and that the unrecorded easement from R.E. Lyall to Western States Telephone Company should not have been admitted into evidence.

### Constitutional Claim

■ The Blazzards argue that the court's ruling that the applicable right-of-way along McLaws Road was 33 feet from the center line of the road violates article II, § 17 of the Arizona Constitution since it constitutes a taking of property without just compensation and without due process. The Blazzards contend that the right-of-way extends only to the actual width of the road, which is 24 feet.

The trial court's ruling was presumably[2] based on A.R.S. § 28–1862, which provides as follows:

"All highways constructed, laid out, opened or established prior to August 12, 1927 as public highways by the territory or state, or by a board of supervisors or legal subdivision of the state, and which have been used continuously by the pub-

---

1. The instructions to the jury were not reported, and it is difficult to determine from the record exactly how the jury was instructed.

2. The arguments on the ruling were not reported. The record presented to us shows only the fact of the ruling and not the basis for it. We presume that the statute was the basis since that is what is argued in the briefs.

lic as thoroughfares for free travel and passage for two years or more, regardless of any error, defect or omission in the proceeding to establish the highways, or in recording of the proceedings, and all highways established pursuant to law, are declared public highways sixty-six feet wide, unless the width thereof is otherwise specified."

The partial summary judgment entered in May 1983 declared McLaws Road to be a public highway and contained language pursuant to Rule 54(b), Rules of Civil Procedure, 16 A.R.S., to the effect that there was no reason for delay in entry of the judgment. No appeal was filed from that judgment.

The summary judgment was based on evidence of an 1896 resolution of the Navajo County Board of Supervisors declaring the road to be a county road, a 1912 County Book of Roads map from the county engineer's office showing the road, and an affidavit by George McLaws (who was then 79) that the road had been used as a public thoroughfare since long before 1927. The width of the road was not stated in the 1896 resolution.

The Blazzards contend that, because the paved road now in existence is only 24 feet wide, the right-of-way could have been no more than that in 1927 when the statute was enacted. They insist that means McLaws Road "grew" from 24 feet to 66 feet on the effective date of the statute in 1927 and that "growth" deprived abutting property owners of their property without compensation and without due process. We need not address that issue, however, because the Blazzards have raised this complaint against the wrong party. Navajo County is the only party against whom such an argument may be asserted, and it is no longer a party to this action. Not only was the claim not raised in the third-party complaint against Navajo County, but the Blazzards in fact stipulated to Navajo County's dismissal from the case. There is no pending inverse condemnation or quiet title action against the county and never has been. Since Continental has not claimed authority to use the property pursuant to any right of eminent domain, the Blazzards' contention that this property has been taken without compensation is not properly before this court.

*Trespass Along Highway Right-of-Way*

 The Blazzards contend that, even if the ruling on the right-of-way did not violate the Arizona Constitution, Continental's attempt to lay the second cable was also a trespass because a landowner whose property is burdened by a public highway still retains full dominion and control over the property subject only to the easement for public travel. They assert that they are entitled to be compensated for the taking of subsurface property rights because of Continental's attempt to lay the second cable. The Blazzards are, however, precluded from raising that issue in this appeal. The summary judgment entered in May 1983 held that Navajo County has the authority to grant franchises for utility purposes within the right-of-way. That judgment was entered pursuant to Rule 54(b), Rules of Civil Procedure, 16 A.R.S., and no appeal was taken from it. The issue is, therefore, untimely raised.

*Verdict Actuated by Passion and Prejudice*

 The third issue raised by the Blazzards on appeal is a claim that the jury failed to follow instructions in assessing damages and was actuated by passion and prejudice, and that the trial court erred in denying their motion for a new trial or for additur.

"[T]he test for reviewing the granting or refusing of a trial judge's adjustment of a verdict is complex and can only be solved by an ad hoc approach. Almost always when there is a conflict in the evidence, the trial judge should not interfere with what is peculiarly the jury's function, and if he does not, we will nearly always uphold him.... Behind all of these tests still stands the original doctrine—that if the verdict is supported by adequate evidence, it will not be dis-

turbed, and the greatest possible discretion is in the hands of the trial judge." *Creamer v. Troiano*, 108 Ariz. 573, 576–577, 503 P.2d 794, 797–798 (1972).

The Blazzards note that evidence was introduced that their property had increased in value from the purchase price of $120,000 to $370,000 because of the preparation of their development plans and that it decreased in value by $80,000 to a total of $290,000 because Continental buried its telephone cable and removed the overhead line and poles. Blazzard also testified that the fair rental value of the property with the buried cable in place was $7,920 per month, and he sought $475,200 for the five years the cable had been in place to the date of trial. The Blazzards argue that, since a Continental employee testified that the cost of its efforts in attempting to bury the second cable was $8,168.34, the award of $8,368.34 with no punitive damages indicates that the jury failed to properly follow instructions. They assert that Continental incurred expenses with regard to its attempt to lay the second cable only because it trespassed on their property in laying the first one. Although that may be true, it does not necessarily mean that the jury was operating under passion or prejudice in awarding only $200 above that amount.

The Blazzards failed to acknowledge that there was conflicting evidence as to the effect of the cable on the market value of the subdivision plans and that two real estate people had testified no houses were selling in the Holbrook area at the time of trial and almost none had sold in the previous two to three years. There was also testimony that the Arizona Corporation Commission would require their subdivision to have buried utility lines. A telephone company employee testified that the average monthly revenue to Continental from the buried cable was $1,344 and that average monthly expenses for it were $1,580. In addition, there was testimony that the reasonable rental value of cable right-of-way (if any rental was paid at all) in the area was $10 per mile per year or $2 per acre.

The trial judge heard the evidence in this case and observed the witnesses, yet denied the motion. The Blazzards have failed to produce evidence of prejudice or an unjust result. *Tucson Utility Supplies, Inc. v. Gallagher*, 102 Ariz. 499, 433 P.2d 629 (1967). Primarily, their complaint is that the jury did not accept their contention that the property was extensively damaged by Continental's trespass. We find no abuse of discretion in the court's ruling. *Hardy v. Southern Pacific Employees Association*, 10 Ariz.App. 464, 459 P.2d 743 (1969).

*Admissibility of So-Called Easement*

■ The final argument is that the trial court erred in admitting into evidence the document on which Continental relied as authority for the initial laying of the underground cable. As noted above, the document was also an application to receive telephone service, was signed only by Lyall and not his wife, and was never recorded. Since the Blazzards, as subsequent purchasers of the property, had no notice of the document (which was found in telephone company files), it could not serve to create an easement running with the land in favor of the telephone company.

■ The Blazzards argue first that insufficient foundation was laid for the document's admission into evidence. Larry Bigler, a telephone company employee since 1956, testified that Western States Telephone purchased the company he worked for (Navapache Telephone Company) in 1957 and began installing new equipment and a new system. He testified to the company's method of obtaining applications for telephone service and utilizing the same documents as easements for installing lines and poles across telephone users' property. He identified the signature of the telephone company employee on the document and testified that the documents were kept in the regular course of the company's business. A foundation under Rule 803(6), Rules of Evidence, 17A A.R.S., was thus clearly established.

■ The second objection to admission of the document is that it was never recorded. The Blazzards note correctly that, since they had no notice of it before they pur-

**6**

chased the property, it cannot be binding upon them as subsequent purchasers. A.R.S. §§ 33–411, 33–412. They argue, therefore, that the document was not relevant under Rule 402, Rules of Evidence, 17A A.R.S. We find no error in the admission of the document in light of the court's rulings and jury instructions that the easement was no longer in effect since it was not recorded, that it had served only as a license for the telephone company to install the original overhead poles and line, and that the company's first entry on the property to install the buried cable was without authority. Since the Blazzards sought punitive damages against Continental for its trespass on their property, the document was relevant on the question of whether Continental had any colorable justification for entering the property in order to lay the buried cable. We find no error.

Affirmed.

HATHAWAY, C.J., and HOWARD, P.J., concur.